CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

12/27/2022

LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KYLE S.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:22-cv-00001 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Kyle S. ("Kyle") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") or Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f. Kyle alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess his physical impairments and assess his allegations regarding his symptoms. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Kyle's Motion for Summary Judgment (Dkt. 17).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Kyle failed to demonstrate that he was disabled under the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Kyle filed for DIB and SSI in May 2019, claiming that his disability began on March 31, 2018, due to horse shoe kidney and issues with his bladder, severe right ulnar nerve damage, pain in his neck radiating down his right arm into his hand, status post right wrist injury and surgery, locked right ring finger and pinky finger, difficulty using his right hand gripping and writing, low back pain radiating into his right leg, anxiety and panic attacks, depression, and

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

post-traumatic stress disorder ("PTSD"). R. 85–86, 103. Kyle's date last insured is December 31, 2022; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 18; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Kyle's applications at the initial and reconsideration levels of administrative review. R. 85–97, 102–117. On June 15, 2021, ALJ Michael Dennard held a hearing to consider Kyle's claims for DIB and SSI. R. 36–71. Counsel represented Kyle at the hearing, which included testimony from vocational expert Mark Hileman. On July 15, 2021, the ALJ entered his decision analyzing Kyle's claims under the familiar five-step process[3] and denying his claims for benefits.[4] R. 18–28.

The ALJ found that Kyle suffered from the severe impairments of carpal tunnel syndrome, dysfunction of the right upper extremity, and lumbar degenerative disc disease. R. 21. The ALJ found Kyle was mildly limited in the broad functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 21–22.

The ALJ determined that Kyle's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22. The ALJ specifically

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Kyle was 35 years old on his alleged onset date, making him a younger person under the Act. R. 27.

considered listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and listing 1.18 (abnormality of a major joint in any extremity).

The ALJ determined that Kyle retained the residual functional capacity ("RFC") to perform light work. R. 23. Kyle can lift 20 pounds occasionally and 10 pounds frequently. Id. He can sit, stand, and walk for 6 hours in an 8-hour workday. Id. Kyle can occasionally operate hand controls with his right hand, reach overhead to the right, and handle items with his right hand. Id. He has fingering and feeling limitations occasionally with the right hand. Id. Kyle can frequently climb ramps and stairs, stoop, kneel, crouch, or crawl. Id. He can occasionally climb ladders, ropes, or scaffolds. Id. He can occasionally work at unprotected heights and move mechanical parts. Id. The ALJ determined that Kyle had no past relevant work but could perform jobs that exist in significant numbers in the national economy, such as usher, tanning salon attendant, and rental consultant. R. 26–27. Thus, the ALJ determined that Kyle was not disabled. R. 28. Kyle appealed the ALJ's decision, and the Appeals Council denied his request for review on November 22, 2021. R. 1–4.

## ANALYSIS

Kyle alleges that the ALJ failed to properly assess both his physical impairments and his allegations regarding his symptoms.

### A. Medical History Overview

1. Medical Treatment[5]

Kyle has a history of pain in his right shoulder, arm, wrist, and hand that predates his alleged onset date. Kyle had surgery for right wrist flexor tenolysis in February 2016. R. 991. He has been diagnosed at various times with carpal tunnel syndrome, lesion of ulnar nerve,

---

[5] Because Kyle alleges that the ALJ erred in adequately considering his physical impairments only, I did not include a summary of his mental health medical history and treatment in this opinion.

4

compression of ulnar nerve at multiple levels, complex regional pain syndrome type 1 affecting right forearm, causalgia of the forearm, chronic pain syndrome, and rotator cuff syndrome. R. 720, 732, 786, 807, 941. To help with the pain in his right arm and hand, Kyle received brachial plexus blocks, injections in his wrist, and medication. R. 711, 716, 720, 732, 741, 750, 772, 807, 817. Kyle was also prescribed physical therapy to help with his shoulder pain. R. 864, 960. At his appointments with Dr. Marc Swanson, M.D., Kyle sometimes had 4/5 strength in his right extremity, reduced palmar/ulnar sensation, and diminished reflexes bilaterally in the triceps and brachioradialis. R. 719–20, 731–32, 786. Despite this, Dr. Swanson stated that Kyle's "[a]ctivity level is such that the patient is able to work, able to do ADLs, and dexterity to grip, repetitive use of right hand remains limited." R. 729, 746, 769.

Kyle also has a history of back and neck pain. Kyle has been diagnosed with low back pain and intervertebral disc disorder of the lumbar region with radiculopathy. R. 591, 810. Kyle took medications and received injections to help with his pain. R. 591, 810, 813. An August 2020 MRI of Kyle's lumbar spine showed degenerative changes of the lumbar spine that worsen at L4-5 and L5-S1. R. 858. Dr. Swanson noted in October 2020 and June 2021 that Kyle walked with a limp, was stooped, and had positive straight leg raising that was worse on the left than the right. R. 813, 1002.

2. Medical Opinions

In December 2019 and September 2020, respectively, state agency physicians Dr. Daniel Camden, M.D., and Dr. Gene Godwin, M.D., found that Kyle was limited to light work with the additional limitations of frequent feeling, frequent handling, and occasional fingering with the right hand. R. 95–96, 115–16. The ALJ found these opinions partially persuasive. R. 26. The ALJ reasoned that Kyle "has additional limitations in his upper extremities that [are] reflected in

this opinion." Id. State agency psychological consultants Dr. Howard Leizer, Ph.D., and Dr. Stephen Saxby, Ph.D., found that Kyle's mental health impairments were non-severe. R. 92, 111. The ALJ found these opinions persuasive. R. 26. The ALJ reasoned that Kyle's "symptoms have been medication managed" and that Kyle was "described with largely intact mental status examinations." Id.

The ALJ also considered treatment notes from Blue Ridge Pain Management Associates ("Blue Ridge") that "described the claimant as able to work and attend to his activities of daily living with his activity level." Id. The ALJ found that to the extent these treatment notes were opinions, they were not persuasive "because they are on the ultimate issue of the case, which is reserved to the Commissioner." Id. The ALJ reasoned that the statements "do generally support that the claimant retains significant residual functioning, despite his conditions, which is supported by the accompany[ing] examinations[.]" Id.

The record also included an examination from a prior period of alleged disability completed by Dr. William Humphries, M.D. The ALJ found that "this opinion is not reflective of the claimant's functioning during the current period of alleged disability." Id.

### B. Function-by Function-Analysis

Kyle argues that the ALJ did not make specific findings, as required by SSR 98-6P, regarding whether his impairments would limit his ability to sit, stand, lie down during the day, use his hands, or take breaks. Pl.'s Br. at 22, Dkt. 18. Kyle argues that the ALJ did not conduct a function-by-function analysis. Id. Kyle points to the constant pain in his lower back and right shoulder, his inability to stand for more than 15 minutes, his need to move from side to side when sitting, difficulty using his right hand, and the need to lie down during the day. The Commissioner counters that the ALJ completed a proper

function-by-function analysis that is supported by substantial evidence. Def.'s Br. at 10, Dkt. 20.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ properly explained how the RFC accounts for Kyle's physical impairments and provided the necessary medical and non-medical facts and evidence to support his

7

conclusions.[6] Addressing Kyle's ability to sit, stand, and walk in light of his lumbar degenerative disc disease, the ALJ acknowledged Kyle's complaints of pain and need for steroid injections. R. 25. The ALJ further noted that Kyle was described in June 2021 as walking with a limp and stooping. Id. However, the ALJ pointed to endorsements by Kyle's treating physicians that his "activity level still allowed him to work and to attend to his activities of daily living" and that Kyle was "better to work." Id. The ALJ also considered the opinions of the state agency physicians who found that Kyle could perform "less than full range of light work[.]"[7] R. 26. The ALJ found that these opinions were consistent with Kyle's lumbar degenerative disc disease. Id.

Kyle also argues that the ALJ ignored or minimized "significant objective evidence" related to Kyle's lumbar degenerative disc disease.[8] Pl.'s Br. at 25, Dkt. 18. Contrary to Kyle's assertion, the ALJ did not ignore any of this evidence. Although Kyle argues that the ALJ minimizes evidence inconsistent with his conclusion, the ALJ does not have to address every piece of inconsistent evidence, Smith v. Colvin, No. 1:12cv1247, 2015 WL 3505201, at *7

---

[6] Kyle argues that the ALJ failed to address his ability to sustain work. Pl.'s Br. at 26–27, Dkt. 18. The purpose of the RFC is to assess "an individual's ability to do sustained work-related physical and metal activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2. Here, the ALJ determined that Kyle could perform sustained work activities in an ordinary work setting on a regular and continuing basis with certain limitations and accommodations. The ALJ provided a narrative discussion explaining his conclusions and the evidence supporting the RFC determination.

[7] Kyle argues that the state agency physicians' opinions were issued prior to the inclusion of evidence in 2021 about Kyle's condition. Kyle argues that "the ALJ based his RFC findings on opinions that were incomplete and did not consider all of the significant objective evidence of record documenting [Kyle]'s lumbar spine impairment is more severe than acknowledged by the state agency physicians." Pl.'s Br. at 25–26, Dkt. 18. While Kyle is correct that the state agency physicians provided their opinions in December 2019 and September 2020, the ALJ did not fail to consider later evidence from 2021 about Kyle's lumbar degenerative disc disease. Contrary to Kyle's assertion, the ALJ dedicated an entire paragraph of relevant medical records from 2021 that acknowledged Kyle's back pain, walking with a limp, and stooping. R. 25.

[8] This evidence includes: (1) an August 2020 lumbar MRI that showed diffuse disc bulges at L4-5 and L5-S1; (2) Dr. Swanson's September 2020 diagnosis of intervertebral disc disorder of the lumbar region with radiculopathy; (3) an October 2020 note from Dr. Swanson noting that Kyle had stooped posture, limping gait, and positive straight leg raising; and (4) a June 2021 note from Dr. Swanson noting Kyle's diminished reflexes in the left knee and both ankles. Pl.'s Br. at 25, Dkt. 18. The ALJ discussed Kyle's September 2020, October 2020, and June 2021 appointments with Dr. Swanson in is opinion. R. 25.

8

(M.D.N.C. June 3, 2015); see also Brittani v. Sullivan, 956 F.2d 1162 (4th Cir. 1992); rather, the ALJ must author an opinion which shows how the evidence of record supports the decision made.

Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Kyle has done no more than identify instances that he did not think were discussed as completely as he would like by the ALJ. Without more, Kyle has not shown that the ALJ ignored or misrepresented the medical record.

Addressing Kyle's ability to use his right arm and hands, the ALJ repeatedly acknowledged Kyle's complaints of pain and noted that he "had limited dexterity, grip, and repetitive use of his right hand[.]" R. 24–25. However, the ALJ pointed to multiple instances in the record where Kyle's providers noted that he was able to work and do activities of daily living. R. 25. The ALJ also considered the opinions of the state agency physicians who found that Kyle could perform "less than the full range of light work[.]" R. 26. The ALJ specifically found these opinions to be only partially persuasive because Kyle had additional limitations in his upper extremities. Id.

9

Kyle argues that the ALJ "minimized" his limitations in light of his improved condition and failed to consider that Dr. Swanson's conclusions about his ability to work and perform daily activities were "canned paragraphs." Pl.'s Br. at 23–24, Dkt. 18. Contrary to Kyle's argument, the ALJ considered Kyle's limitations but found that the conclusions of Kyle's treating physicians and the state agency doctors indicated Kyle could perform some level of work. R. 25–26. The ALJ considered the contents of the treatment notes and not solely the conclusions of Dr. Swanson about Kyle's ability to work and perform daily activities. Kyle also takes issue with the ALJ citing to a treatment note from Dr. Swanson from March 5, 2018, a few weeks before Kyle's alleged onset date. Pl.'s Br. at 23, Dkt. 18. However, Social Security regulations require that an ALJ "will consider all evidence in [a claimant's] record when [she] make[s] a determination or decision whether [a claimant is] disabled." 20 C.F.R. § 404.1520(a)(3). "District Courts in the Fourth Circuit have held that 'all evidence' under § 404.1520(a)(3) includes medical records predating a claimant's alleged onset date." Lewis v. Saul, No. 5:19-CV-02298-DCN, 2021 WL 1040512, at *3 (D.S.C. Mar. 18, 2021) (citing relevant Fourth Circuit case law). Accordingly, the ALJ properly considered Dr. Swanson's opinion from March 5, 2018.[9]

Kyle also argues that the ALJ's decision to reject the opinions from Dr. Humphries is not supported by substantial evidence. Pl.'s Br. at 24, Dkt. 18. Specifically, Kyle argues that "[j]ust because the opinion was rendered in 2016 does not make it worthless for the period beginning on

---

[9] Kyle also argues that the ALJ did not consider a May 7, 2018 treatment note from Dr. Swanson stating that Kyle had lost his job. Pl.'s Br. at 23, Dkt. 18. "While not required to discuss every piece of evidence, an ALJ should discuss evidence that, if believed, could lead to a finding of disability." Naylor v. Astrue, 693 F. Supp. 2d 544, 568 (S.D.W. Va. 2010). Here, the ALJ did just that. The ALJ considered the record as a whole and discussed evidence both favorable and unfavorable to Kyle.

March 31, 2018, especially since the ALJ notes the opinion was consistent with [Kyle]'s chronic upper extremity functioning." Id. at 24–25.

Kyle submitted his application in May 2019, thus, 20 C.F.R. §§ 404.1520c governs how the ALJ considered the medical opinions here.[10] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide, however, that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. Id. "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[11]

---

[10] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

[11] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

Here, the ALJ properly considered Dr. Humphries's opinion under the new regulations. Specifically addressing Dr. Humphries's opinion that Kyle was limited to less than a full range of light work, including being capable only of positioning with his right hand, the ALJ noted that this opinion was "not reflective of the claimant's functioning during the current period of alleged disability." R. 26. Kyle does not point to any other instance in the record where a physician concluded that he was capable of only positioning his right hand. On the contrary, state agency physicians during Kyle's alleged period of disability found that Kyle was limited to light work with the additional limitations of frequent feeling, frequent handling, and occasional fingering with the right hand. R. 95–96, 115–16. Additionally, Dr. Humphries provided his opinion in July 2016. After that time, Kyle indicated that he had improvement in his right-hand functioning in 2018 and 2019. R. 729, 751.

The ALJ adequately explained why he found Dr. Humphries's opinion not persuasive, and I will not reweigh the evidence. The RFC assessment lies squarely with the ALJ, not with any medical provider or examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). To this end, when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the Court defers to the ALJ's decision. Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020).

Contrary to Kyle's contentions, the ALJ provided a detailed summary of Kyle's physical impairments, medical records, testimony, and opinion evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Kyle's alleged symptoms, and the medical opinions of record. This narrative discussion allows

this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### C. Subjective Allegations

Kyle argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Kyle claims that "[i]n evaluating his allegations, the ALJ merely conducts a recitation of some medical evidence with no real evaluation or rationale for the RFC found by the ALJ." Pl.'s Br. at 28, Dkt. 18. Kyle further argues that the ALJ ignored his testimony and allegations "explaining the limited extent he actually performs the daily activities referenced by the ALJ[.]" Id. at 29. Kyle also argues that his "intermittent activities are not comparable to having the ability to perform work activities full time and the ALJ does not explain how these activities establish [Kyle] can work full time." Id. at 30. The Commissioner counters that "the ALJ made clear how he considered [Kyle]'s subjective complaints, why he did not fully credit them, and how he accounted for [Kyle]'s impairments." Def.'s Br. at 15, Dkt. 20.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[12] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the

---

[12] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical,

13

ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

Here, the ALJ found that Kyle's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 24. However, the ALJ found that Kyle's statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the record. Id. Kyle points to Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017) and similar cases to support his argument that Kyle's "intermittent activities [such as working, caring for his daughter, and completing his activities of daily living] are not comparable to having the ability to perform work activities full time[.]" Pl.'s Br. at 30, Dkt. 18. Kyle emphasizes his testimony that his daughter helps his around that house, that he has limited use of his right arm, that he makes simple food, and that he does light cleaning with frequent breaks. Id. at 28–29.

The ALJ repeatedly acknowledged the pain that Kyle experiences and that doctors prescribed physical therapy, medications, and injections to control his pain. R. 24–26. Further, unlike in Brown, the ALJ pointed to more than Kyle's daily activities to discount his subjective

---

physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

allegations.[13] Beyond the activities of daily living, the ALJ noted that medical evidence was inconsistent with Kyle's allegations about the extent of his impairments. R. 24. Kyle's allegations of disability were also inconsistent with the state agency doctors' opinions, who found that Kyle can perform work at a light exertional level with additional limitations. R. 26. The ALJ also noted that Kyle's providers noted his "activity level still allowed him to work and to attend to his activities of daily living" and that he was "better to work[.]" R. 25. Finally, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Kyle's subjective complaints with substantial evidence, and that Kyle is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

---

[13] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

The clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: December 27, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge