CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/16/2023

LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KYLE S.,[1] | CASE NO. 6:22-cv-00001 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross motions for summary judgment. Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to then-Magistrate Judge Robert S. Ballou for proposed findings of fact and a recommended disposition. In his Report and Recommendation ("R&R"), Judge Ballou determined that the Commissioner of Social Security's final decision was supported by substantial evidence and advised this Court to deny Plaintiff's motion and grant the Commissioner's motion. Plaintiff timely filed his objections, obligating the Court to undertake a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(C); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). The Commissioner also filed a timely response to Plaintiff's objections. Dkt. 23. The Court finds that Plaintiff's objections do not have merit and adopts Judge Ballou's R&R in full.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

1

**Standard of Review**

Objections to a magistrate judge's R&R under Federal Rule of Civil Procedure 72(b) "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). The district court must determine *de novo* any portion of the magistrate judge's R&R to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C); *Farmer*, 177 F. App'x at 330–31.

In conducting its review, the Court must affirm the Administrative Law Judge ("ALJ's") factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Bird v. Comm'r of Soc. Sec.*, 669 F.3d 337, 340 (4th Cir. 2012). Substantial evidence requires more than a mere scintilla, but less than a preponderance of evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). The Court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ, *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012), and must defer to the ALJ's decision where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," *Johnson*, 434 F.3d at 653.

"Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the Court would have made contrary

determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971).

## Background

### A. Kyle's Relevant Medical History

Kyle has a history of pain in his right shoulder, arm, wrist, and hand. In February 2016, he had surgery for right wrist flexor tenolysis. Administrative Record ("R.") 991. He has been diagnosed with carpal tunnel syndrome, lesion of ulnar nerve, compression of ulnar nerve at multiple levels, complex regional pain syndrome type 1 affecting right forearm, causalgia of the forearm, chronic pain syndrome, and rotator cuff syndrome. R. 720, 732, 786, 807, 941. To reduce the pain in his right arm and hand, Kyle received brachial plexus blocks, injections in his wrist, and medication. R. 711, 716, 720, 732, 741, 750, 772, 807, 817. To help with pain in his shoulder, he was prescribed physical therapy. R. 864, 960. At his physical therapy appointments with Marc Swanson, M.D., Kyle sometimes reported 4/5 strength in his right extremity, reduced palmar/ulnar sensation, and diminished reflexes bilaterally in the triceps and brachioradialis. R. 719–20, 731–32, 786.

Kyle also has a history of back and neck pain. He has been diagnosed with low back pain and intervertebral disc disorder of the lumbar region with radiculopathy. R. 591, 810. To help with his pain, Kyle took medication and received injections. R. 591, 810, 813. According to an August 2020 MRI of his lumbar spine, Kyle had degenerative changes of the lumbar spine that worsened at L4-5 and L5-S1. R. 858. In October 2020 and June 2021, Dr. Swanson noted that Kyle walked with a limp and was stooped. R. 813, 1002.

### B. The ALJ Decision

In May 2019, Kyle filed for disability insurance benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. §§ 401–403. R. 18. He claimed that his disability began on March 31, 2018 and was due to horse shoe kidney and issues with his bladder, severe right ulnar nerve damage, pain in his neck radiating down his right arm into his hand, status post right wrist injury and surgery, locked right ring finger and pinky finger, difficulty using his right hand gripping and writing, low back pain radiating into his right leg, anxiety and panic attacks, depression, and post-traumatic stress disorder ("PTSD"). R. 18, 85–86, 103.[2] The state agency denied his applications at the initial review and on reconsideration. R. 85–97, 102–117.

On June 15, 2021, the ALJ held a hearing to consider Kyle's claims for DIB. R. 34–71. On that same day, the ALJ entered his decision denying Kyle's claims. R. 18–28. In making his decision, the ALJ worked through the standard five-step inquiry to determine if Kyle was disabled by considering whether he (1) was engaged in substantial gainful activity;[3] (2) had a severe medical impairment; (3) had an impairment listed or equivalent to one listed in the Act's regulations; (4) could return to his past relevant work based on his residual functional capacity ("RFC"); and, if he could not, (5) whether he could perform other work based on his RFC. 20 C.F.R. § 404.1520(a)(4); *see Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). "The burden of proof lies with the claimant during the first four steps but shifts to the Commissioner at step

---

[2] Because his insurance ends on December 31, 2022, he must demonstrate that his disability began before or on this date and existed for twelve continuous months to receive DIB. R. 18; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not, a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b).

[five]." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020) (citing *Lewis*, 858 F.3d at 861).

In applying the five-step inquiry, the ALJ found at step one that Kyle met the insured status requirements of the Act and that he had not been engaged in substantial gainful activity since March 31, 2018, the alleged onset date. R. 20. At step two, the ALJ found that Kyle had severe impairments of carpal tunnel syndrome, dysfunction of the right upper extremity, and lumbar degenerative disc disease. R. 21. He found that Kyle was mildly limited in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 21–22. At step three, the ALJ found that Kyle's mental and physical impairments, either individually or in combination, did not meet or equal the requirement of a listed impairment. R. 22–23.

At step four, the ALJ found that Kyle retained the RFC to perform light work with additional limitations. R. 23. The ALJ determined that Kyle is capable of lifting 20 pounds occasionally and 10 pounds frequently, and can sit, stand, and walk for 6 hours in an 8-hour workday. *Id.* He also found that Kyle can occasionally operate hand controls with his right hand, occasionally reach overhead to the right, and occasionally handle items with his right hand. *Id.* He determined that Kyle had feel limitations occasionally with the right hand, and that he can frequently climb ramps and stairs, and stoop, kneel, crouch, or crawl. *Id.* He continued by finding that Kyle can occasionally climb ladders, ropes, or scaffolds, or work at unprotected heights, or move mechanical parts. *Id.* The ALJ concluded that Kyle is unable to perform past relevant work as an auto set coverer. R. 26.

In making his RFC findings, the ALJ weighed the opinions of medical providers. In December 2019 and September 2020, state agency physicians, Daniel Camden, M.D., and Gene Godwin, M.D., found that Kyle was limited to light work with limitations of frequent feeling, frequent handling, and occasional fingering with the right hand. R. 95–96, 114–16. The ALJ found these opinions partially persuasive and determined that Kyle "ha[d] additional limitations in his upper extremities." R. 26.

The ALJ also considered Dr. Swanson's medical opinions. Dr. Swanson stated that Kyle's "[a]ctivity level is such that the patient is able to work." R. 729, 746, 769. The ALJ found that to the extent these statements were opinions, they were unpersuasive. R. 26. But he noted that Dr. Swanson's opinions "generally support that [Plaintiff] retains significant residual functioning, despite his conditions." *Id.* The ALJ evaluated William Humphries, M.D.,'s examination of Plaintiff from a period prior to the alleged disability, but found his opinions were "not reflective of [Plaintiff's] functioning during the current period of alleged disability." *Id.*

At step five, the ALJ considered Kyle's RFC, age, education, and work experience to conclude that Kyle could perform jobs that exist in significant numbers in the national economy, such as an usher, a tanning salon attendant, and a rental consultant. R. 27. Based on these findings, the ALJ concluded that Kyle was not disabled. R. 28. On November 22, 2021, the Appeals Counsel denied Kyle's request for review. R. 1–4.

### C. The R&R

In the R&R addressing the parties' cross motions for summary judgment, Dkts. 17, 19, then-Magistrate Judge Ballou determined that the ALJ's final decision was supported by substantial evidence. Dkt. 21. Judge Ballou considered Plaintiff's arguments that the ALJ failed

to properly assess his physical impairments and his allegations regarding his symptoms. *See id.* First, Judge Ballou found that the ALJ applied the correct legal standard for his function-by-function analysis and that his conclusions on Plaintiff's physical impairments were supported by substantial evidence. *Id.* at 6–13. Second, Judge Ballou found substantial evidence to support the ALJ's determination regarding Plaintiff's allegations and "that [Plaintiff] is capable of performing work at the level stated in the ALJ's opinion." *Id.* at 13–15.

## Analysis

Plaintiff claims that the ALJ failed to properly assess his physical impairments under the function-by-function analysis and that the ALJ failed to consider his allegations regarding his symptoms. *See* Dkt. 22.

### A. Objections to ALJ's Function-by-Function Analysis

Plaintiff objects to the ALJ's function-by-function analysis of Plaintiff's physical impairments and argues that the ALJ failed to address contradictory evidence to the ALJ's findings. *Id.* at 1–4.

The ALJ must provide an RFC that accounts for the work activities the claimant can perform given any physical or mental impairments affecting his ability to work. *See* SSR 96-8P, 61 Fed. Reg. at 34476 (July 2, 1996). An RFC assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* To comply with the function-by-function analysis, the ALJ must provide a narrative discussion describing "how the evidence supports each conclusion, citing specific medical facts

(e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 34478; *see also Mascio v. Colvin*, 780 F.3d. 632, 636 (4th Cir. 2015).

The ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis" and detail "the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8P, 61 Fed. Reg. at 34478; *see also Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Ultimately, the ALJ must explain the conclusions reached and any inconsistencies or ambiguities in the evidence. *See* SSR 96-8P, 61 Fed. Reg. at 34478; *Monroe*, 826 F.3d at 189.

The Fourth Circuit has rejected a per se rule requiring remand when the ALJ fails to conduct a function-by-function analysis; instead, the Fourth Circuit has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)); *see also Monroe*, 826 F.3d at 189 (noting that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion").

Here, the ALJ complied with the function-by-function analysis and explained how his RFC findings account for Plaintiff's physical impairments. He cited objective medical evidence, such as Plaintiff's medical history, R. 23–26, and nonmedical evidence, such Plaintiff's testimony and daily activities, R. 24–25, when making his findings. *See generally Mascio*, 780 F.3d. at 636. The ALJ also provided a narrative discussion that explains the conclusions he reached and any inconsistencies in the evidence. *See* SSR 96-8P, 61 Fed. Reg. at 34478; *see, e.g.*, R. 24 (The ALJ considering the evidence and finding Plaintiff's statements "concerning the

8

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence.").

In objecting to the function-by-function analysis, Plaintiff claims that the ALJ ignored or minimized objective evidence related to his lumbar degenerative disc disease. Dkt. 22 at 3–4. However, contrary to his claim, the ALJ did not ignore or minimize such evidence. *See* R. 24–26. For instance, he specifically considered the August 2020 lumbar MRI showing diffuse disc bulges at L4-5 and L5-S1 and noted that Plaintiff received lumbar steroid injection treatment. R. 24–25.

Plaintiff also claims that the ALJ failed to properly access his upper extremities. Dkt. 22 at 3–4. To support his claim, Plaintiff argues that the ALJ did not fully consider his medical records with Dr. Swanson. *Id.* at 2, 4. According to Plaintiff, Dr. Swanson's opinions about his ability to work were made after his first appointment with Dr. Swanson and then repeated in every treatment note thereafter, despite the medical reports showing "changes and deterioration in [P]laintiff's impairments and functioning after that initial visit." *Id.* at 2. Thus, Plaintiff argues that the ALJ "solely focused on the conclusions of Dr. Swanson" rather than considering the content of the medical records. *Id.* at 4–5.[4]

---

[4] Plaintiff also objects to the ALJ considering Dr. Swanson's treatment note from March 5, 2018, which was a few weeks before Plaintiff's alleged onset date. Dkt. 22 at 5. However, such an objection lacks merit. Under the Social Security regulations, an ALJ "will consider all evidence in [a claimant's] case record when [he] make[s] a determination or decision whether [a claimant is] disabled." 20 C.F.R. § 404.1520(a)(3). "District courts in the Fourth Circuit have held that 'all evidence' under § 404.1520(a)(3) includes medical records predating a claimant's alleged onset date." *Lewis v. Saul*, No. 5:19-cv-02298-DCN, 2021 WL 1040512, at *3 (D.S.C. Mar. 18, 2021); *see Cotton v. Colvin*, No. 5:14–cv–425–FL2015 WL 5714912, at *3 (E.D.N.C. Sept. 29, 2015) ("Where evidence predating the alleged date of disability is made part of the record, the regulations require the Commissioner to consider that evidence.").

However, his argument is not supported by the record. First, the ALJ considered medical opinions by Dr. Swanson that were not repeated in each of his treatment notes. For instance, the ALJ considered Dr. Swanson's June 7, 2021 opinion that Plaintiff was "better to work." R. 25 (citing R. 1001). This conclusion was made after Plaintiff's alleged onset date. *See* R. 1001. Second, the ALJ did not only rely on Dr. Swanson's conclusions in assessing Plaintiff's upper extremities. He considered the contents of Plaintiff's medical records with Dr. Swanson, the state agency physician's opinions, and Plaintiff's allegations to conclude that Plaintiff had "additional limitations in his upper extremities" that were reflected in his RFC findings. R. 24–26.

Plaintiff further argues that the ALJ did not consider his medical record on June 7, 2021 from New Horizons Healthcare, Dkt. 22 at 2, in which Plaintiff provided that his shoulder could not "lift too much," R. 1005. While the ALJ did not specifically note Plaintiff's allegation in the June 7, 2021 medical record, the ALJ considered other similar allegations made by Plaintiff. *See* R. 24 (The ALJ considering Plaintiff's allegations that he had "difficulty gripping and writing with his right hand" and "that he cannot lift more than 15 pounds, and that he drops things."). Moreover, the ALJ "is not required to comment in the decision on every piece of evidence in the record." *Smith v. Colvin*, No. 1:12-cv-1247, 2015 WL 3505201, at *7 (M.D.N.C. June 3, 2015) (internal quotation marks and citation omitted); *see also Brittain v. Sullivan*, 956 F.2d 1162, at *6 (4th Cir. 1992) ("An ALJ need not comment on all evidence submitted.").

In addition, Plaintiff claims that the ALJ failed to properly consider Dr. Humphries's opinion[5] and explain why he found his opinion was unpersuasive. Dkt. 22 at 5–6. The ALJ must assess every medical opinion received in the evidence when making an RFC assessment and

---

[5] On July 22, 2016, Dr. Humphries determined that Plaintiff was limited to less than the full range of light work, including that his right is "capable of positional only." R. 531.

10

"explain whether he finds a given medical opinion persuasive." *Jennifer C. D. v. Kilakazi*, No. 3:21-cv-280, 2022 WL 4272301, at *3 (E.D. Va. Sept. 15, 2022) (citing 20 C.F.R. §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5)).[6] The most important factors in determining the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[7] "Supportability" is defined as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" is defined as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim," 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ's determination that Dr. Humphries's opinion was unpersuasive complies with the "supportability" and "consistency" factors. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ noted Dr. Humphries's opinion was "supported by the accompanying examination, and consistent with the claimant's chronic upper extremity functioning." R. 26. But the ALJ concluded that his opinion was "not reflective of [Plaintiff's] functioning during the current period of alleged disability" because it was based on a consultation examination that occurred before the period of alleged disability. R. 26. Additionally, the ALJ's determination was consistent with the state agency physicians' findings that Plaintiff during the period of

---

[6] The regulations note that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The regulations also note that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [the ALJ] considered all of the factors for all of the medical opinions and prior administrative medical findings in [his] case record." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

[7] 20 C.F.R. §§ 404.1520c, 416.920c applies to petitioner claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017)).

alleged disability was limited to light work with additional limitations of frequent feeling, frequent handling, and occasionally fingering with the right hand. R. 95–96, 115–16. The ALJ's determination was also consistent with Plaintiff's medical history and medical examinations, which indicated that Plaintiff was able to work and engage in daily living activities. *See* R. 25.

Notably, the Court's review here is limited to determining whether the ALJ applied the appropriate legal standards and whether substantial evidence supports his RFC findings. *See Hancock*, 667 F.3d at 472, 476 (deciding that it would not reweigh evidence that was already considered by the ALJ in determining the plaintiff's adoptive functioning); *see also Bryan S. v. Kijakazi*, No. 7:20-cv-00358, 2021 WL 5278741, at *5 (W.D. Va. Aug. 4, 2021), *report and recommendation adopted*, No. 7:20-cv-00358, 2021 WL 4443061 (W.D. Va. Sept. 28, 2021) (providing that the plaintiff's "citations to contradictory statements in the medical records amounts to his impermissibly asking the court to reweigh the evidence"). The ALJ applied the appropriate legal standards, and substantial evidence in the record supports his RFC findings. *See generally* SSR 96-8P, 61 Fed. Reg. at 34478. Thus, the Court finds that Plaintiff's objections to the ALJ's function-by-function analysis lack merit.

### B. Objection to ALJ's Assessment of Plaintiff's Subjective Allegations

Plaintiff argues that substantial evidence does not support the ALJ's assessment of Plaintiff's subjective allegations. Dkt. 22 at 6.

Under the regulations, the ALJ must apply a two-step analysis when evaluating a claimant's statements about his impairments and symptoms. SR 16-3p, 2016 WL 1119029, at *4 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). At step one, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be

expected to produce the claimant's alleged symptoms. *Id.* Second, after finding an impairment, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit his ability to perform work-related activities. SSR 16-3p, 2016 WL 1119029, at *4; §§ 404.1529(c), 416.929(c). At this step, "objective evidence is *not* required to find the claimant disabled," *Arakas*, 983 F.3d at 95 (citing SSR 16-3p, 2016 WL 1119029, at *4–5) (emphasis in original), and a claimant can "rely exclusively on subjective evidence" to prove step two, *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006). Accordingly, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 WL 1119029, at *4.

    Here, at step one, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 24. However, at step two, he determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence because the record supports that he "retains significant residual functioning, despite his conditions." *Id.*

    Plaintiff specifically claims his case is like *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251 (4th Cir. 2017), arguing that the ALJ "absolutely relied upon plaintiff's daily activities to discount plaintiff's subjective allegations." Dkt. 22 at 7. In *Brown*, the ALJ found that the plaintiff's statements about the limiting effects of his pain were inconsistent with his testimony about his daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping. *Brown*, 873 F.3d at 269. On appeal, the Fourth Circuit found that the ALJ failed to

"build an accurate and logical bridge from the evidence to his conclusion that [the plaintiff's] testimony was not credible." *Id.* at 269 (internal quotation marks and citation omitted).

Unlike *Brown*, the ALJ here "built an accurate and logical bridge" from the evidence in the record to his assessment of Plaintiff's allegations. *See Monroe*, 826 F.3d at 189 (internal quotation marks omitted). In assessing Plaintiff's testimony, the ALJ found his statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with several medical examination reports spanning from March 2018 through June 2020. R. 24–25. The ALJ also found his statements were inconsistent with his medical provider's treatment notes, which stated that his "activity level still allowed him to work" and that he was "better to work." R. 25. The ALJ thus relied on more than Plaintiff's daily activities to discount his allegations.

Because substantial evidence supports the ALJ's assessment of Plaintiff's allegations, the Court finds that Plaintiff's objection to the ALJ's assessment of his subjective allegations lacks merit.

## Conclusion

For the foregoing reasons, Plaintiff's objections to the R&R will be overruled and the Court will adopt Judge Ballou's R&R in full.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record.

ENTERED this 16th day of March, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE